UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD SHOAIB NOORI (A-244-891-217),<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | No.  1:26-cv-2612 DAD CSK<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Mohammad Shoaib Noori (A-244-891-217), a native and citizen of Afghanistan, who is proceeding through counsel, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner entered the United States on January 15, 2025, and was detained by U.S. Immigration and Customs Enforcement ("ICE").  Petitioner has been detained since that time.  This habeas action concerns petitioner's detention.

Pending before the Court is respondents' motion to dismiss.  (ECF No. 13.)  For the reasons discussed below, this Court recommends that the motion to dismiss be denied, the petition for writ of habeas corpus be granted and respondents be ordered to provide petitioner with a bond hearing before an immigration judge within seven days of the date of this order.

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.   BACKGROUND[2]

Petitioner is a native and citizen of Afghanistan who applied for admission to the United States at San Ysidro, California, Port of Entry, on January 15, 2025.  (ECF No. 1-2 at 2.)  Petitioner was detained by ICE on January 15, 2025.  (ECF No. 1 at 2.)  On February 18, 2025, petitioner was issued a Notice to Appear charging petitioner with being subject to removal for not having a valid entry or travel document at the time of application for admission pursuant to Immigration and Nationality Act ("INA") section 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I).  (ECF No. 1-2 at 2.)  An asylum officer later determined that petitioner demonstrated a credible fear of persecution or torture, and petitioner's case was referred to immigration court for removal proceedings.  (ECF No. 1 at 6.)  On or around April 22, 2025, petitioner filed an application for asylum, withholding of removal and protection under the Convention Against Torture ("CAT").  (Id.)  Petitioner's removal proceedings and CAT claims remain pending.  (Id.)

Petitioner's removal case has experienced multiple delays.  The immigration court initially scheduled a video hearing on March 8, 2025.  (ECF No. 1-3 at 22.)  The March 8, 2025 hearing was continued to April 23, 2025.  (Id. at 20.)  The reason for this continuance is not clear from the record.  (See id. at 25.)  The April 23, 2025 hearing was continued to May 28, 2025 for "preparation-respondent/attorney preparation."  (Id. at 18, 25.)  The May 28, 2025 hearing was continued to June 25, 2025 for "preparation-respondent/attorney/representative."  (Id. at 16, 25.)  The June 25, 2025 hearing was continued to August 19, 2025 for an individual merits hearing.  (Id. at 14, 25.)  The August 19, 2025 hearing could not be completed due to insufficient time.  (Id. at 25.)  On August 20, 2025, the hearing was continued to September 26, 2025.  (Id. at 12.)  On August 27, 2025, the hearing was continued to September 19, 2025.  (Id. at 10.)  The September 19, 2025 hearing was continued due to immigration judge reassignment and because petitioner

[2]  The background is taken from the petition and attached exhibits.  (ECF No. 1, ECF No. 1-2, ECF No. 1-3, ECF No. 1-5.)  Respondents do not dispute petitioner's factual assertions.  (See ECF No. 13.)  Petitioner also attaches his medical records.  (ECF No. 1-4.)  This Court has reviewed petitioner's medical records but does not address them in these findings and recommendations.

was not presented for the hearing.  (Id. at 25.)  The September 26, 2025 hearing was continued "to allow for scheduling of priority case."  (Id.)  On October 1, 2025 the hearing was continued to December 19, 2025.   (Id. at 8.)  The reason for this continuance is not clear from the record.  (See id. at 8, 25.)  The December 19, 2025 hearing was continued to March 9, 2026 due to "IJ Leave."  (Id. at 6, 25.)  On February 18, 2026, the hearing was continued to March 9, 2026.  (Id. at 4.)  On March 4, 2026, a notice was issued continuing the hearing to June 29, 2026.  (Id. at 2.)  The March 9, 2026, hearing was continued due to immigration judge reassignment and "docket management."  (Id. at 25.)

Petitioner requested custody redetermination before an immigration judge, with hearings held on July 18, 2025 and August 13, 2025.  (ECF No. 1-5 at 2, 5.)  After the immigration judges indicated that the immigration court lacked jurisdiction to conduct a bond hearing, petitioner withdrew his motion for custody redetermination.  (ECF No. 1 at 2; ECF No. 1-5 at 2, 5.)

## II.    PROCEDURAL BACKGROUND

Petitioner filed the petition for writ of habeas corpus on March 13, 2026 in the United States District Court for the Central District of California.  (ECF No. 1.)  On April 3, 2026, the Central District of California district court transferred this action to the United States District Court for the Eastern District of California.  (ECF No. 7.)  On April 16, 2026, respondents filed a motion to dismiss.  (ECF No. 13.)  Petitioner did not file an opposition to the motion to dismiss.  (See Docket.)  Briefing is complete.

## III.    LEGAL STANDARDS

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its

3

protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

**IV.    DISCUSSION**

Petitioner challenges his prolonged detention without a bond hearing before a neutral decisionmaker where the government must establish that petitioner is a flight risk or danger as a due process violation.  (ECF No. 1 at 18.)  In the motion to dismiss, respondents argues that petitioner is an applicant for admission and subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  (ECF No. 13 at 1.)  Respondents also argue that this action should be stayed pending the Ninth Circuit's resolution of Rodriguez v. Bostock, No. 25-6842 (9th Cir.).  (Id. at 2.) Respondents do not address the prolonged detention due process claim raised by petitioner.

**A.    Due Process Claim Based on Prolonged Detention**

An applicant for admission is normally ordered removed "without further hearing or review" pursuant to an expedited removal process.  8 U.S.C. § 1225(b)(1)(A)(i).  But if a § 1225(b)(1) noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that noncitizen is referred for an asylum interview.  8 U.S.C. § 1225(b)(1)(A)(ii).  While awaiting this credible fear interview, the noncitizen is to remain detained.  8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  If an immigration officer determines after that interview that the noncitizen has a credible fear of persecution, "the [noncitizen] shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii).  At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

The only statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R. §§ 212.5(b), 235.3.  Such parole, however, "shall not be regarded as an admission of the [noncitizen]."  8 U.S.C. § 1182(d)(5)(A).  Instead, when the purpose of the parole has been served, "the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case

shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id.

This Court agrees with other district courts that have addressed this issue:

> As the Supreme Court explained in Jennings v. Rodriguez, section 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." 583 U.S. 281, 297 (2018). Until consideration of an individual's application for asylum has concluded, "nothing in the statutory text imposes any limit on the length of detention" and "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." Id.
>
> However, Petitioner's rights are not limited to those laid out by statute. Nothing in the Supreme Court's decision in Jennings precludes Petitioner from bringing this as-applied constitutional challenge. See Nielsen v. Preap, 586 U.S. 392, 420 (2019) (explaining that the Court's decision that mandatory detention statute did not provide a bond hearing "does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it"). As the Ninth Circuit identified on remand from Jennings, that Supreme Court case solely addressed whether section 1225 itself permits arbitrary prolonged detention and "declined to reach the constitutional question." Rodriguez, 909 F.3d at 255.

Mohammed v. Warden of California City Det. Ctr., 2026 WL 192368, at *2 (E.D. Cal. Jan. 26, 2026) (granting petitioner's motion for temporary restraining order and ordering bond hearing within seven days before an immigration judge of petitioner detained for seventeen months pursuant to § 1225(b)). The petition presented compels this Court to reach this question.

The Fifth Amendment Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. To determine if petitioner's procedural due process rights have been violated, courts examine two steps: the first step determines whether there exists a protected liberty interest under the Due Process Clause; and the second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989);

5

Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### 1. Petitioner Has a Protected Liberty Interest

The Court turns to the first step to determine whether a protected liberty interest exists under the Due Process Clause. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). Petitioner was initially detained by DHS on January 15, 2025, and has remained in custody for over fifteen months since. "Further, due to Petitioner's asylum claim, he is not subject to expedited removal but rather faces indefinitely prolonged detention while his asylum case is processed. His case will first be heard by an Immigration Judge, then by the Board of Immigration Appeals, followed by the Ninth Circuit provided either party seeks further review. As Petitioner has been deprived of the liberty secured by the Due Process Clause and this deprivation will continue for a protracted and indefinite period, Petitioner has established his liberty interest." Mohammed, 2026 WL 192368, at *3 (petitioner with pending asylum claim detained pursuant to § 1225(b)). The Court concludes that petitioner has a protected liberty interest. See id.; Tigranyan v. Warden of California City Detention, 2026 WL 91765, at *4 (E.D. Cal. Jan. 13, 2026), adopted by 2026 WL 130843 (E.D. Cal. Jan. 16, 2026) (concluding petitioner detained pursuant to § 1225(b)(1) with pending asylum claim determined to be credible has a protected liberty interest); see also Khaco v. Warden, 2026 WL 295551, at *4 (E.D. Cal. Feb. 4, 2026) (petitioner detained pursuant to § 1225(b)(1) with asylum claim pending has protected liberty interest); Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the petitioners who were detained under § 1225(b)(1) adequately "alleged a right to substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt

6

individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals").

2.      Due Process Framework

Having established that petitioner has a protected liberty interest, the Court must now determine what process is due.  District courts in the Ninth Circuit have applied different tests to make this determination, including the three-factor test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), and other tests.  See Mohammed, 2026 WL 192368, at *3 (describing different tests used by district courts); Abdul-Samed v. Warden of Golden State Annex Detention Facility, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) (for prolonged detention of asylum applicant detained under § 1225(b), applying multi-factor test articulated in Lopez v. Garland, 631 F. Supp. 3d 870, 880 (E.D. Cal. 2022) for mandatory detention under 8 U.S.C. § 1226(c)).  This Court applies the three-factor test articulated in Mathews, 439 U.S. 319.[3]  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that the Mathews standard applies to a due process challenge to a noncitizen's ongoing detention); Mohammed, 2026 WL 192368, at *3 (applying Matthews).  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

a.      Private Interest

Turning to the first factor in Mathews, petitioner has a strong liberty interest in avoiding prolonged detention without a neutral detention hearing.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.  Petitioner has been detained for over 15 months.  Compared to the six-month presumptive period set forth in Zadvydas, beyond which continued detention becomes prolonged, petitioner's detention qualifies as prolonged.  See Zadvydas, 533 U.S. at 701.  An individual's private interest in "freedom from

---

[3]  The Court notes that the factors in the other tests district courts have applied overlap to varying degrees with the due process analysis.  See Abdul-Samed, 2025 WL 2099343, at *6-8.

prolonged detention" is "unquestionably substantial."  Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011), abrogated on other grounds by Rodriguez Diaz, 53 F.4th at 1196; see also Lopez v. Garland, 631 F. Supp. 3d at 880 ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citation omitted).

In evaluating this factor, the court also takes into account whether petitioner contributed towards the length of his prolonged detention.  See Rodriguez Diaz, 53 F.4th at 1207-08; Arshakyam v. Warden of California City Det., 2026 WL 143143, at *4 (E.D. Cal. Jan. 20, 2026). Some of petitioner's prolonged detention is the result of continuances petitioner requested in his asylum proceedings.  The hearings set for April 23, 2025 and May 28, 2025 were continued so that petitioner's counsel could have more time to prepare.  (ECF No. 1-3 at 25.)  The record reflects that the continuances after those dates cannot be attributed to petitioner and were generally caused by administrative circumstances such as immigration judge reassignment, insufficient time, etc.  (Id.)  Respondents do not appear to dispute this as they did not address the arguments raised in the petition in the motion to dismiss.  (ECF No. 13.)  Based on this record, this Court finds that though petitioner's requests for continuances delayed his proceedings somewhat, the proceedings have been largely delayed through no fault of petitioner, resulting in petitioner's prolonged detention.  See also Lopez, 631 F. Supp. 3d at 882 ("[T]he fact that Petitioner chose to pursue [an application for relief] and requested continuances to further that application does not deprive him of a constitutional right to due process.").

While petitioner's next hearing is set for June 29, 2026, this "does not [necessarily] mean that his asylum application will be resolved on that date[.]"  See Tigranyan, 2026 WL 91765, at *5.  "[A] decision by the [immigration judge] is not the end of petitioner's asylum case since either side may appeal to the BIA and then petition for review by the Ninth Circuit resulting in petitioner remaining in detention."  Id.; see Mohammed, 2026 WL 192368, at *3.  "Thus, there is no clear end date for petitioner's detention on the record before this court."  Tigranyan, 2026 WL 91765, at *5; see Mohammed, 2026 WL 192368, at *3.  This Court finds that the circumstances discussed above tip the first Mathews factor in petitioner's favor.  See Tigranyan, 2026 WL 91765, at *5 (first Mathews factor weighed in petitioner's favor where petitioner detained almost

8

15 months pursuant to § 1225(b)(1): "While some of petitioner's prolonged detention is the result of continuances he requested in his immigration court proceedings, additional continuances have also resulted from a clogged immigration court docket."); Arshakyam , 2026 WL 143143, at *4 (in granting motion for a temporary restraining order for a bond hearing for a petitioner detained for 14 months pursuant to § 1225(b)(1), court found that first Mathews factor weighed "somewhat" in petitioner's favor where the length of petitioner's prolonged detention "largely due to petitioner's own actions").

### b.    Risk of Erroneous Deprivation

Here, the risk of erroneous deprivation is considerable.  See Mohammed, 2026 WL 192368, at *4; Tigranyan, 2026 WL 91765, at *6; Khaco, 2026 WL 295551 at *6; see also Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) ("the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial"), abrogated on other grounds by Rodriguez Diaz, 53 F.4th 1189; Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional").  "Civil immigration detention is 'nonpunitive in purpose and effect' and, therefore, only justified when a noncitizen is a flight risk or danger to the community."  Mohammed, 2026 WL 192368, at *4 (quoting Zadvydas, 533 U.S. at 690). Respondents do not claim that petitioner has a criminal record or poses a flight risk.  (See ECF No. 13.)  In addition, an asylum officer found that petitioner has a credible fear of persecution. (ECF No. 1 at 6.)  While petitioner requested two bond hearings, petitioner withdrew these requests after immigration judges indicated that the immigration court lacked jurisdiction to conduct the bond hearing.  (ECF No. 1 at 2; ECF No. 1-5 at 2, 5.)  Where petitioner has been detained for over fifteen months, has not received a bond hearing where a neutral decisionmaker determined whether petitioner posed a danger to the community or a risk of flight to justify continued detention, his asylum hearing has been postponed multiple times and most recently to June 29, 2026, and it is not clear when detention will end given that even after the asylum hearing, the immigration judge must issue a decision, which either side may appeal to the BIA, and further appeal to the Ninth Circuit, the probable value of this additional procedural safeguard

9

is high.  See Maksim v. Warden, Golden State Annex, et al., 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025); Mohammed, 2026 WL 192368, at *4; Tigranyan, 2026 WL 91765, at *6; Khaco, 2026 WL 295551, at *6.  For these reasons, the second Mathews factor weighs in favor of petitioner.

> ### c.      Government's Interest

Under the third factor, the court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail."  Mathews, 424 U.S. at 335.  The Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a bond hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); see Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025); Maksim, 2025 WL 2879328, at *5.  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094; see Mohammed, 2026 WL 192368, at *4.  Petitioner's individual request for a bond hearing also involves a minimal fiscal and administrative burden, and respondents do not argue otherwise.  (See ECF No. 13.)  "Thus, there is not even the suggestion, much less a basis in the record to find, any fiscal or administrative burden to the government that would result from providing a bond hearing to petitioner."  Tigranyan, 2026 WL 91765, at *6. For these reasons, the third Mathews factor weighs in favor of petitioner.

> ### 3.      Conclusion

The Court concludes that petitioner's detention is prolonged and he is entitled to a bond hearing before an immigration judge/neutral decisionmaker.  At the bond hearing, respondents would bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to demonstrate that continued detention is warranted. See Mohammed, 2026 WL 192368, at *3-4, 5 (where petitioner detained pursuant to § 1225(b)(1), ordering a bond hearing before an immigration judge); Tigranyan, 2026 WL 91765, at *5-6, 7 (same); Khaco, 2025 WL 295551, at *6 (same); A.E. v. Andrews, 2025 WL 1424382, at *4 (E.D. Cal. May 16, 2025), adopted by 2025 WL 1808676 (E.D. Cal. July 1, 2025) (same); Maksim, 2025 WL 2879328, at *6 (same).

## V.   CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondents' motion to dismiss (ECF No. 13) be DENIED.

3. Respondents be ordered to provide petitioner Mohammad Shoaib Noori (244-891-217), with a bond hearing before an immigration judge/ neutral decisionmaker within **seven (7) days** of the adoption of these findings and recommendations where respondents bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to justify his continued detention.

4. The Clerk of the Court be directed to enter judgment in favor of petitioner and  close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven** days of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 1, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Noor2612.imm.bond/2

11